GEORGE BULLOCK v. E. B. GEE LAND COMPANY, a Corporation, ET AL.; EVERETT B. GEE and FARM INDUSTRIES, INC., a Corporation, Appellants.—148 S. W. (2d) 565.

Division One, March 13, 1941.

*Edward F. Sharp* and *C. M. Buck* for appellants.

724

*Merrill Spitler* and *Ward & Reeves* for respondent.

CLARK, J.—Appeal from the Circuit Court of Scott County. The suit is to quiet title to a large tract of land in New Madrid County and was originally brought in that county and the venue changed.

Pending here is a motion by respondent to dismiss the appeal for failure to comply with our Rule 13, alleging that appellants' abstract does not set forth so much of the record as is necessary to a complete understanding of all the questions presented. Appellants' abstract contains 309 printed pages. It sets forth portions of the oral testimony in narrative form and portions of exhibits with, in some instances, a statement of what appellants claim such exhibits show. Respondent has filed an additional abstract containing 121 pages, setting out some of the testimony in greater detail. We think the additional abstract does help to clarify the issues, but since we believe that appellants have been unconsciously influenced by their own theory of the case and have not intentionally attempted to mislead the court, we will overrule the motion and consider the case on the merits.

We deem it unnecessary to set forth the pleadings at length. The suit is against appellants and many other known and unknown defendants. Plaintiff claims title through one Allan G. Morrison. On November 12, 1929, a portion of the land was conveyed by Himmelberger-Harrison Lumber Company to Morrison, who on the same day executed a note for $294,000, payable in one year to George W. Hobbs and secured by deed of trust on said land, one G. C. Hill being named as trustee. On the same day another tract of land was conveyed by Himmelberger-Harrison Land & Investment Company to Morrison who executed a note for $49,000 payable in one year to Hobbs and secured by a similar deed of trust. These deeds and deeds of trust were promptly recorded. Other lands located in Section 2, Township, 22, Range 12, and not included in said deeds and deeds of trust were described in the petition. Plaintiff bought all the land at tax sales on January 26, 1931, the tax suits having been commenced in April, 1930, against Allan G. Morrison and wife, G. C. Hill, trustee, George W. Hobbs and other defendants. Appellant, Gee, claims to be the owner in due course of the $294,000 note and appellant, Farm Industries Inc., claims to be the owner in due course of the $49,000 note.

The pleadings make this a case in equity and we try it *de novo*, giving due deference to the findings of the chancellor. [Aden v. Dalton, 341 Mo. 454, 107 S. W. (2d) 1070.]

Voluminous briefs with copious citations have been filed by the parties, that on the part of appellants setting out no less than fourteen "points." Many of these may be conceded, and those which in our view require discussion may be reduced to the following: (1) the chancellor erred in rejecting certain evidence offered by appellant; (2) the tax sales are void for inadequacy of consideration; (3) no common source of title having been agreed on as to the lands in Sec-

tion 2, and plaintiff having failed to show title to the lands in said section, he cannot recover as to such land; (4) that appellants have the right to redeem because, as the alleged assignees of the notes secured by deeds of trust, they were not made parties defendant in the tax suits.

(1) While Allan G. Morrison was on the witness stand, one of appellants' attorneys asked him several questions in an effort to prove that on the day he executed the deeds of trust he executed a deed describing the same lands. All these questions were objected to on various grounds, among others, that it was not the best evidence, that the transaction was with a person now deceased, and that no such defense was pleaded. This evidence was excluded. Then appellants' counsel offered to prove by the witness that he executed this deed to Darby Day Investment Co., and delivered it to a Mr. Downie; that the deed was never recorded and that witness had never seen it since its delivery. Counsel also stated that the evidence was proper under an amendment to the answer made during the trial. This offer of proof was rejected by the court and we think properly so. Appellants did not show diligence in attempting to locate this alleged lost deed. Nor do we find any amendment to appellants' answer which would make such deed admissible. The answer of appellant Gee is based on the claim that he is the owner of the $294,000 note and the prayer is to permit him to foreclose the deed of trust and redeem the land from the tax sale. Appellant has not pointed out, and we fail to find, where this answer was amended. Later in the trial appellant introduced an unrecorded deed from the receiver of Darby Day Investment Company to appellant Gee. But a claim that Gee owns the land in fee simple would be inconsistent with the claim set up in his answer that he has a right to redeem under the deed of trust. [41 Corpus Juris 775, sec. 869.]

Even if this offer of proof had been sustained and the evidence received, we would not be strongly impressed with its probative value. While the effort was being made to introduce this evidence one of appellants' counsel stated that the witness did not know the name of the grantee in the alleged lost deed. The offer of proof stated that the deed was delivered to one Downie. Downie was a defendant and his deposition was taken and filed in the case, but he was not asked about any deed being executed by Morrison at the time the latter executed the deeds of trust. Downie did say that Morrison conveyed the land by quitclaim to Farm Industries, Inc., but that company was not organized until 1935, nearly six years after the deeds of trust were executed. The witness, Morrison, filed an answer in the instant case, later withdrawn, in which he claimed to own the land.

(2) Appellants say the tax sales are void for inadequacy of consideration. We deem it unnecessary to review the cases cited on this point for, as we read the record, no such inadequacy of considera-

tion is shown as will authorize us in this collateral proceeding to set aside the tax deeds. The lands involved in this case comprise about 1500 acres which, at the time of the tax sales in 1931, were for the most part cut over swamp lands unsuited for cultivation. The price paid was about twelve cents per acre, but they were sold subject to unpaid taxes for the years 1929 and 1930 amounting to more than $9,300. This makes the consideration amount to between six and seven dollars per acre. The evidence shows that, on account of the condition of the land and the financial depression then existing, the lands had no market value. Witnesses gave their opinion that the actual, as distinguished from the market, value at the time of the tax sales was from eight to ten dollars per acre.

(3)  At the beginning of the trial it was stipulated that the Himmelberger-Harrison Lumber Company is the common source of title, except as to the lands described in Section 2 and the northwest quarter of Section 25.

The land in Section 25 was not included in the decree.

In his answer, appellant Gee alleged that *all* of said Section 2 was included in the deed of trust securing the $294,000 note under which he claims. The other appellant alleged that a portion of Section 2 is included in the deed of trust securing the $49,000 note. Appellants' abstract of the record does not set out the description of the land contained in these deeds of trust, but does say that the two together describe the land in litigation. Thus, from appellants' pleadings and abstract it appears that appellants claim all the land in litigation by virtue of the deeds of trust executed by Morrison and, as respondent claims under a tax judgment against Morrison and others, appellants are not in a very good position to claim that common source of title was not shown. Indeed, appellants do not seem to have made this point during the trial. Appellants did introduce a deed, dated January, 1930, showing a sale to E. A. Grimes Realty Company under a tax judgment against Himmelberger-Harrison Lumber Company for land in the southeast quarter and the northwest quarter of Section 2, and other lands, all of which land seems to have been included in the Morrison deeds of trust. Appellants' abstract shows that this deed was not introduced to disprove common source of title, but to show that the Grimes Company was the record owner of this land at the time of the rendition of the tax judgment under which respondent claims title. However, respondent proved that the Grimes Company conveyed this land back to the Himmelberger-Harrison Company and the latter company conveyed it to the respondent. In respondent's brief it is stated that a portion of the land in Section 2, to-wit, the west half of the southwest quarter, was not embraced in either of the conveyances to Morrison or in the deeds of trust given by him. If this land was not included in the Morrison deeds of trust, appellants make no claim to it, for they claim solely through these deeds of trust,

and cannot complain as to the decree vesting title to such land in plaintiff as against other non-appealing defendants. All the rest of the land was described in the deeds of trust executed by Morrison and in the tax suits against Morrison. This shows common source of title and makes it unnecessary for us to review the cases cited on this point.

(4) Appellants say they should have the right to redeem as assignees of the notes secured by deeds of trust, because the holders of the notes at the time of the institution of the tax suit were not made parties to that suit.

Hobbs, the payee named in the notes, and Hill, the trustee named in the deeds of trust, were defendants in the tax suit, but appellants say that prior to the institution of the tax suit the notes had been assigned to Darby Day Investment Company and that such fact was known to the tax collector when he brought the suit and to the plaintiff when he purchased at the tax sale.

Appellants rely upon Section 9953, Revised Statutes 1929 (Mo. Stat. Ann., sec. 9953, p. 7995), which provides that suits for taxes shall be prosecuted ''against the owner of the property, if known, and if not known, then against the last owner of record, . . .''

Appellants offered proof that, prior to the tax suit, the collector had been informed that the Darby Day Investment Company claimed to own the land and the Chicago Fidelity and Casualty Company claimed to own the $49,000 note. There was also evidence that representatives of the Darby Day Investment Company or the Chicago Fidelity and Casualty Company, or both, at various times procured statements from the collector showing the amount of taxes due on the land. However, the collector testified that it was customary to make such statements for any one who requested them without regard to whether he was the owner or not.

The ownership of these notes was put in issue by the pleadings in the instant case (suit to quiet title). In his answer defendant, Gee, alleged that he is the owner and holder in due course of the $294,000 note and that the tax collector, at the institution of the tax suit, knew that Hobbs, the payee, had transferred the note to ''interests represented by the Darby Day Investment Company, a corporation . . . and the Chicago Fidelity and Casualty Co.,'' both of Chicago, Illinois. The defendant, Farm Industries, Inc., made similar allegations as to the ownership and assignment of the $49,000 note. These allegations were denied in plaintiff's replies.

From the record, we have been unable to definitely trace the history of these notes. It seems clear that Hobbs, the payee, never had any actual interest in them, never had possession of them and never saw them except on the last day of December, 1929, when, at the instance of Downie, he endorsed them in blank. Hobbs was cashier of the Marquette Eastern Finance Company and Downie also had some

connection with that company. Morrison was a brother of Downie's wife and was employed and paid by Downie to go to Cape Girardeau, receive the deeds from the Himmelberger-Harrison companies, and execute the notes and deeds of trust. Shortly after these notes were executed, Downie, Himmelberger and others incorporated the Chicago Fidelity and Casualty Company; the Darby Day Investment Company of Chicago being used as a holding company for the Casualty Company. Himmelberger subscribed for a large block of stock in the Casualty Company and the same was issued to his agent and employee, one Pfeffer, under an agreement which was brought out in the evidence of the witness Pfeffer and identified as defendants' (appellants') Exhibit No. 1. That agreement is in the form of a letter, dated December 31, 1929, signed by Pfeffer and addressed to Darby A. Day and J. B. McCutchan, with a paragraph added signed by Day and McCutchan stating that the letter correctly sets forth the understanding. In part, the letter states: that in accordance with the understanding between yourselves (Day and McCutchan), the undersigned (Pfeffer) has executed a subscription agreement for 12320 shares of stock in the Chicago Fidelity and Casualty Company, to be paid for through transfer and delivery to said company, or its incorporators, of the mortgages described on the reverse side of the subscription agreement; that Day and McCutchan shall within sixty days furnish the cash to pay the taxes on the mortgaged land for the years 1925-1928 and all drainage taxes; that Pfeffer will then deliver a certain portion of the stock to Day and McCutchan and the rest of the stock "will be received by Himmelberger-Harrison Lumber Company in payment for the lands covered by said mortgages."

Pfeffer never had possession of any notes, was never requested to deliver stock or notes to any one and still had the stock in his possession at the trial of the title suit. Day never paid any taxes on the land in suit.

The Himmelberger-Harrison companies received no consideration from Morrison for the land which they conveyed to him. They must have intended to get their pay by selling the notes which Morrison executed and this fact is conceded at pages 2 and 3 of appellants' brief. If the notes were ever assigned to the Chicago Fidelity and Casualty Company it did not pay the agreed consideration for them. Stock in that company was issued to Pfeffer, but Day did not comply with his agreement to pay the taxes on the mortgaged land. The payment of these taxes would have increased the assets of the company and, consequently, the value of the stock to be delivered to the Himmelberger-Harrison Company, to the extent of several thousand dollars.

On the same day that Exhibit No. 1 was signed, Downie and a man named Meyers, who was an employee of Darby Day Investment Company, procured the endorsement of Hobbs on the notes and delivered

them to Day at Chicago. There is some evidence that the notes at one time were pledged as security to an insurance company in Ohio. Several of the companies with which Downie was connected were placed in receivership and Downie became insolvent. Day was convicted in the Federal Court for fraudulent promotion schemes. In 1931 Downie brought suit against the Chicago Fidelity and Casualty Company and its receiver and the Darby Day Investment Company and its receiver charging that notes and deeds of trust given on Missouri lands were without consideration and void and constituted a fraudulent scheme to build up fictitious assets. Mr. E. F. Sharp, Attorney for Downie in that suit, testified that his client received several notes in compromise, among them being the $49,000 note which was delivered to Downie's wife, Mary A. Downie. Downie testified that he bought this note and other notes from the Federal Surety Company of Davenport, Iowa, for $500, the purchase money being furnished by one Callahan and the note transferred to the Farm Industries, Inc. The latter company was organized in 1935 by Downie, his wife, daughter and two or three others. W. S. Edwards testified that he and the defendant, Gee, bought the $294,000 note from the receiver of the St. Louis Can Company in 1935, paying $1500 for it. Gee did not testify. The only endorsement on this note was by the original payee, George W. Hobbs. In addition to an endorsement by Hobbs, the $49,000 note contained an endorsement from Darby Day Investment Company, by G. C. Hill, to Mary A. Downie, and one from Mary A. Downie to the order of Farm Industries, Inc. Apparently G. C. Hill is the same person who was named as trustee in the deeds of trust. These notes were long past due when acquired by defendants and were acquired with full knowledge that the land had been sold for taxes.

We cannot determine with certainty just who was the real owner of these notes at the institution and during the pendency of the tax suit. It is clear that Downie assumed complete control of the notes and that he and the corporations which he represented were content to let the apparent ownership remain in Hobbs, the straw man. Hobbs was a defendant in the tax suit as was also Hill, the trustee, and *Downie procured waivers of service from both of them in that suit.* Downie and the Himmelberger-Harrison Company were defendants in the title suit and have not appealed.

Notwithstanding our statute, Section 9953, supra, requires the real owner, if known, to be made a party to a suit for taxes, and notwithstanding that the tax collector knew of the claims of the two Chicago companies, yet, under the evidence detailed above, we cannot convict the trial chancellor of error in refusing to hold the tax deeds void as to these defendants. The chancellor may well have found that the title of defendants is defective. The defendants were not content to stand on the presumption of ownership arising from their posses-

sion of the notes. They alleged and attempted to prove the manner in which they claim to have acquired title to the notes. This proof, as heretofore stated, shows that Day and McCutchan did not perform their part of the agreement upon which depended the transfer of the notes from the Himmelberger Company to the Chicago Fidelity and Casualty Company. Defendants acquired the notes after maturity and subject to any defect in the title. [Section 2680, R. S. Mo. 1929, Mo. Stat. Ann., sec. 2680, p. 669; First Natl. Bank v. Johnson (Mo. App.), 261 S. W. 705.] The Chicago Fidelity and Casualty Company, not having acquired title to the notes, was not a necessary party to the tax suit.

Under all the circumstances, the appellants are not in good position to enforce their claims in a court of equity.

"One may purchase a cause of action at law and enforce all legal rights which go with it, but the right to appeal to the conscience of a court of equity cannot be bought or sold." [Monticello Bldg. Co. v. Monticello Inv. Co., 330 Mo. 1128, 52 S. W. (2d) 545.]

The decree of the chancellor is hereby affirmed. All concur.