BANK OF NEW MADRID, a Corporation, v. GEORGE BULLOCK and BELLE BULLOCK, his wife, Appellants, and A. H. ORTMAN, Respondent.— No. 38838.—179 S. W. (2d) 81.

Division One, April 3, 1944.

*Merrill Spitler,* for appellants.

712

*Oliver & Oliver* for respondent.

GANTT, J.—Action for specific performance of the contract of George Bullock to convey to A. H. Ortman, Sec. 24, Twp. 21, R. 11, New Madrid County, Mo. The contract of sale, warranty deed executed by Bullock and wife, draft and two notes covering the purchase price, were delivered to the Bank of New Madrid as escrow agent pending examination and determination of title to the land. Mrs. Bullock was only interested as a wife. Ortman and Bullock disagreed with reference to the matter and in January, 1943, each demanded of the bank the warranty deed. Thereupon the bank, on its petition and by consent of the parties, delivered to the clerk of the court, all of the documents in its possession relating to the transaction and was by the court discharged.

The answers filed by Ortman, Bullock and wife to the bank's petition presented the questions to be determined on the issue of specific performance. The chancellor decreed specific performance.

The above mentioned contract was executed by Ortman and Bullock on Feb. 19, 1935. Therein Bullock agreed to convey the land with a merchantable title to Ortman for $6000 within a year, which sum is admitted to have been a fair price for the land at that time. Ortman was authorized to take possession of the land pending a determination of the question of title. He did not do so. Bullock remainded in possession. An examination of the abstract disclosed defects in the title. To quiet the same, Bullock filed suit (Bullock v. Johnson et al.) on April 18, 1935.

On Aug. 7, 1935, the parties executed a supplementary agreement. It reduced the land conveyed to six hundred twenty-five acres. In effect, it stated that because of defects in the title, Bullock would be unable to convey a merchantable title within a year and provided that he should be given a reasonable time within which to quiet the title. It also provided that until Bullock could convey such a title, he "shall" remain in possession of the land, retain the crops grown thereon and pay the taxes and special assessments, if any, against the land. The supplementary agreement was not delivered to the escrow agent.

In Bullock v. Johnson et al., and on Dec. 9, 1935, judgment was entered by default in favor of Bullock quieting the title to the land. On June 7, 1937, by leave of court, E. B. Gee intervened in Bullock v. Johnson et al., under Secs. 1247 and 1249, R. S. Mo. 1939. Under

said leave and on Dec. 9, 1937, E. B. Gee and the Farm Industries, Inc. (under the control of Gee) filed motions to set aside and modify the default judgment in Bullock v. Johnson et al. The motions alleged that the land was sold to Bullock under a judgment for taxes; that Gee and Farm Industries, Inc., owned certain notes secured by deeds of trust on the land; that they were not made parties and served with notice of the suit, and for that reason the judgment for taxes was void. The motions laid dormant in the circuit court until May 20, 1941. In the trial of Bullock v. Johnson et al., which commenced on or about said date, the motions were considered, and on Dec. 16, 1941, judgment was rendered overruling the motions and quieting the title to the land in Bullock, which judgment was affirmed by this court on Sept. 8, 1942. [Bullock ▇ v. Johnson et al., 350 Mo. 443, 166 S. W. 2d 573.] On Dec. 16, 1942, the mandate of this court in said cause was filed in the circuit court. Thereupon, on the disagreement of the parties, as above stated, the escrow agent sought relief by petition to the circuit court.

In the meantime and pending a trial of the case of Bullock v. Johnson et al., supra, Bullock filed suit on March 26, 1936, against E. B. Gee Land Co. et al., to quiet title to other lands. The above mentioned notes also were secured by deeds of trust on said lands. The judgment in the circuit court quieted title to said lands in Bullock. On the determination of said case in the circuit court, and on Nov. 17, 1939, Bullock communicated with Ortman by letter which was a rambling and complaining communication with reference to the transaction. The letter closed as follows: ''It is Mr. Bullock's desire that Dr. Ortman either accept or reject the title and complete the sale or call it off, as he may desire.'' Ortman ignored the letter. On Gee's appeal in Bullock v. E. B. Gee et al., we affirmed the judgment. [347 Mo. 721, 148 S. W. 2d 565.] In that case we stated that on the record we could not determine who was the owner of said notes at the time of the tax suit above mentioned. Thereafter Gee filed suit against Bullock to set aside the tax deed conveying the land to Bullock and to determine Gee's interest in the land. Judgment was for Bullock and Gee appealed. We affirmed the judgment on Sept. 8, 1942. [349 Mo 1154, 164 S. W. 2d 281.] We also affirmed the judgment in the companion case of Everett B. Gee v. Mary B. Johnson et al., on Sept. 8, 1942. [164 S. W. 2d 285.]

We do not understand Bullock's contentions. He makes a scrambled presentation of different theories. Seemingly, he contends that the judgment of the circuit court in Bullock v. E. B. Gee et al., and the affirmance of said judgment by this court (347 Mo. 721, 148 S. W. 2d 565) quieted the title to the land in question. He also contends that the affirmance of the judgments by this court in Gee v. Bullock, and Everett D. Gee v. Mary B. Johnson et al., 349 Mo. 1154, 164 S. W. 2d 281, 285, also quieted the title to the land in question. We do not

think so. If the judgment in said cases quieted the title, why did he prosecute to final judgment the original suit (Bullock v. Johnson et al., supra) to quiet the title? The prosecution of the original suit by Bullock to final judgment is an admission that he knew the question was not finally determined by the judgments in the other cases.

He also contends that if the land had decreased in value, Ortman could have at any time "backed out" and refused to comply with the contract of purchase. This is an admission that he was unnecessarily delaying the suit to quiet the title. It was the duty of Bullock to quiet the title, and the unnecessary delay, if any, in doing so must be charged to him.

He also contends that "time was of the essence of the contract". In this connection he argues, as above stated, that the title was quieted by the judgment of the circuit court in November, 1939 (Bullock v. E. B. Gee et al., 347 Mo. 721, 148 S. W. 2d 565), and that it was the duty of Ortman to accept the title and take possession of the land at that time. In other words, he argues that Ortman's failure to accept the title and take possession of the land at that time authorized Bullock to repudiate the contract. We have heretofore ruled that the judgment in the last mentioned case did not quiet the title.

He also contends that it would be inequitable to enforce specific performance because he was compelled to retain possession and farm the land pending determination of the question of title. He only complied with his contract by doing so. Furthermore, the evidence shows that he profited by his possession and control of the land during the years pending the determination of the title. Ortman was at all times ready to comply with the contract. He in no way interfered with Bullock's effort to quiet the title. It happened that the land materially increased in value after Bullock contracted to sell the same to Ortman. The increase in value prompted Bullock's letter to Ortman on November 17, 1939. It was written in an effort to induce Ortman to cancel the contract.

We find nothing inequitable in the enforcement of the contract. The chancellor below ruled correctly, and the judgment should be affirmed. It is so ordered. All concur.