ETHEL S. EDWARDS, ETHEL S. EDWARDS, Trustee for E. B. GEE LAND COMPANY, a Corporation, and E. B. GEE LAND COMPANY by ETHEL S. EDWARDS, E. B. GEE and W. S. EDWARDS, Trustee of E. B. GEE LAND COMPANY, a Dissolved Corporation, Appellants, v. CHARLES FRIBORG, Respondent, No. 41875—235 S. W. (2d) 255.

Division Two, January 8, 1951.

McHaney & McHaney and Edward F. Sharp for appellants.

*Merrill Spitler* for respondent.

[255] ELLISON, P. J.—This is a suit in equity brought in October, 1944, by the plaintiffs-appellants against the defendant-respondent Friborg for specific performance of a written contract made on February 16, 1938, between the appellant Ethel S. Edwards and respondent Friborg, covering 118 acres of agricultural land in New Madrid county. The contract was written by the appellant W. S. Edwards, an abstracter, farm manager and a stockholder and director of the appellant E. B. Gee Land Company, a corporation at the time but later dissolved in October, 1943. The appellant Ethel S. Edwards, wife of W. S. Edwards, also was impleaded as trustee of the corporation, and she and her husband and E. B. Gee were further impleaded as trustees of the Land Company since its dissolution as a corporation. The contract is long and repetitious. We shall merely summarize it and state the underlying facts.

Respondent Friborg was a farmer with limited·financial resources. In 1935 he had purchased the land in suit from one Bullock, who took back a deed of trust covering deferred note payments and interest amounting at the time to about $1650. Also about $550 in taxes on the land were in arrears. In addition to that there were pending

two title suits,[1] one brought by Bullock against the E. B. Gee Land Company and the other by Gee against Bullock, involving the tract in controversy here and other land. If the Land Company prevailed in those suits Bullock's and Friborg's title would fail. If Bullock prevailed Friborg's title from him would be good, subject to the notes and deed of trust he had given Bullock. But Bullock was foreclosing that deed of trust against Friborg, for default in payment of some or all of the obligations secured by it, and the foreclosure sale was to take place in the near future.

In that situation respondent sought advice from appellant W. S. Edwards of the [256] E. B. Gee Land Company on February 16, 1938. Edwards advised Friborg to enjoin the foreclosure, and wrote the contract sought to be enforced in this case. He did not read it to Friborg, but discussed it with him as it was being written over the course of a half-hour. The only named parties thereto were Friborg and appellant Ethel S. Edwards, who was also a stockholder in the E. B. Gee Land Company. Apparently, she was not present when the contract was written: her name was subscribed thereto "By W. S. Edwards." So far as appeared therein she was contracting personally, and not as a representative of the E. B. Gee Land Company. Friborg signed personally, and the following day his wife (since deceased) for a consideration of $1 signed a written ratification of the contract on a carbon copy thereof.

The contract first recited in "Whereases" the title implications arising out of the pending litigation between Bullock, Gee and the E. B. Gee Land Company, and stated Friborg "*has* conveyed said land under this agreement to Ethel S. Edwards by quit claim deed" (italics ours). Then it proceeded to state the terms of the agreement between the two named contracting parties. They were that if it was finally adjudicated in the litigation between Bullock and Gee and the E. B. Gee Land Company, that Bullock was the owner of the land[1] when he conveyed it to Friborg, and that Gee and the Land Company had no interest therein, then Mrs. Edwards would pay the taxes on the land when and as they must be paid, and would pay Bullock the sum due him. But it was specified that she should not be personally liable to Bullock. And she further agreed to pay such notes and taxes as might be declared a lien on the land.

Following that were stipulations that after the title had been "definitely determined to be vested in Ethel S. Edwards," she would hold it in trust for 12 months for the following purposes: (1) "to reimburse herself for any money paid out in connection with the above described land, together with six per cent interest per annum

---

[1] As was later decided by this court on March 11, 1941, in Bullock v. E. B. Gee Land Co., 347 Mo. 721, 148 SW. (2d) 565; and on September 8, 1942, in Gee v. Bullock, 349 Mo. 1154. 164 SW. (2d) 281.

thereon; including sums paid on any debt on said land, improvements, taxes or otherwise;'' (2) '' after Ethel S. Edwards has been properly repaid such sums as above stated, which she may have paid out, then she will hold said property in trust, to be sold and the proceeds divided within a period of twelve months from the date after it has been determined that she has the title to said land, and after all sums expended by her have been repaid, then the net proceeds shall be divided equally between Ethel S. Edwards and Charles Friborg.''

The petition in the instant specific performance suit set out the foregoing contract; alleged that to the plaintiffs' best knowledge and belief Friborg signed the quitclaim deed to Ethel S. Edwards at the time, but if so the deed had been lost or destroyed; and then alleged full performance of the contract by plaintiff-appellant Ethel S. Edwards; and that she, as agent and trustee for the E. B. Gee Land Company was ready, willing and able to fulfill her part of her agreement by accepting a deed from the defendant-respondent Friborg, and thereafter to hold the land in trust for the benefit of the parties to the contract. This was followed by a prayer for the execution by Friborg of the deed to Ethel S. Edwards, as trustee; for an accounting of the rents and profits since the making of the contract; for the appointment of a receiver; and for general relief.

Respondent Friborg's answer specifically denied Ethel S. Edwards ever was or is agent or trustee for the Land Company corporation; pleaded in bar a former suit on the same subject matter filed by her personally and later dismissed; admitted he signed the written contract but denied that he understood it; averred it was obtained by misrepresentation and mistake; denied that Ethel S. Edwards performed the contract; denied that he ever signed a quitclaim deed to the land as alleged in the petition; denied that appellants have any interest in the rents and profits; and that he was insolvent. It then pleaded affirmatively: that he was induced to enter into the contract by fraudulent representations made at the time; want of consideration, [257] and that the plaintiffs-appellants here abandoned their right to the rents.

Now turning back to the history antedating the filing in October, 1944, of the instant specific performance suit to enforce the foregoing Friborg-Ethel S. Edwards contract of February 16, 1938. When W. S. Edwards wrote that contract he suggested that Friborg bring an injunction suit to stop the threatened Bullock foreclosure. Both of them consulted attorney E. F. Sharp, and he did bring the Friborg injunction suit on February 22, 1938, and obtained a temporary injunction, W. S. Edwards furnishing a $1000 injunction bond. Friborg lost that suit early in February, 1939, and the damages assessed on the land were $250 attorney fees and costs amounting to $46.95, a total of $296.95, which Edwards paid.

This left Friborg without protection against foreclosure by Bullock of his deed of trust, which he again was threatening to do. So, on August 22, 1939, Friborg filed a petition in bankruptcy under the Frazier-Lempke Act, which forestalled foreclosure. Bullock made three separate efforts to have that proceeding dismissed, but was unsuccessful. While it was still pending this court on March 11, 1941, decided Bullock's suit against the E. B. Gee Land Company, supra,[1] and in favor of Bullock; and on September 8, 1942, the Gee suit against Bullock, supra,[1] was similarly decided. This validated Friborg's title to the land here in suit, as derived from Bullock, and on the next day, September 9, 1942, Mrs. Ethel S. Edwards brought a specific performance suit against Friborg under their contract involved here. In that suit Mrs. Edwards sued personally, and *not* as trustee. [Plaintiffs-appellants' present claims are based on a different petition.]

A little over a month after the original institution of the litigation, appellant W. S. Edwards on November 21, 1942, took from Bullock and in favor of the E. B. Gee Land Company a written "transfer" of Bullock's "notes" [as a matter of fact there were 5 notes for $320 each] and deed of trust against Friborg covering the land in suit, together with any and all of Bullock's rights, claims and interest against Friborg, including claims asserted in the pending bankruptcy proceeding, and for taxes, expenses and court costs paid or incurred by Bullock in attempting to collect on Friborg's notes and deed of trust. For this assignment Edwards paid Bullock for the notes and interest $2499.26, and for drainage taxes and interest $282.98, a total of $2782.24. In so doing Edwards did not treat the transaction as effecting *payment and discharge* of Friborg's obligations taken up, but as an *assignment* of the claims. And he retained the papers thus acquired without cancellation thereof.

On the next day, November 22, 1942, Edwards wrote a letter to Friborg stating that "According to our agreement, we (meaning the E. B. Gee Land Company) have paid Mr. Bullock in full, $2782.24. If you are now ready to make the deed according to our contract, we can then dismiss the suit we have to require the execution of this deed, by you, or a decree with the same effect. * * *" (Parenthesis ours).

This did not produce results, and on September 16, 1943, the E. B. Gee Land Company, acting through W. S. Edwards or attorney E. F. Sharp, filed in the Federal Court bankruptcy proceedings on Friborg's estate, a petition for the sale of his land here in suit, on the ground that the Land Company was the assignee and present holder of Friborg's deed of trust to Bullock. It alleged Friborg had not paid into court the rent on the land, and asked that the land

be sold by a trustee in bankruptcy for the payment of the Bullock deed of trust, the notes secured thereby and taxes.

Nine days later, on September 25, 1943, Friborg came to Edwards and wanted to "take up" the notes and deed of trust Edwards had thus acquired from Bullock for the Land Company on November 21, 1942. Friborg had obtained the money for that purpose from a man named Allgier, whose check, signed in blank, he brought with him, the check being of even date, September 25, 1943. Edwards accepted [258] the money and surrendered the notes to Friborg without objection. The transaction plainly operated as a *payment* of the notes, as shown by the "Memorandum Agreement" entered into by Edwards and Friborg dated the same day, September 25, 1943. It provided in part:

"Whereas the said Charles Friborg is *paying* to W. S. Edwards, agent the *notes* dated February 6, 1935, secured by a deed of trust on the land (describing it); and whereas said parties have a certain contract and agreement (referring to the contract here in suit) with said above claim and whereas said second party has paid certain court costs (in the injunction suit) for Charles Friborg. Now therefore it is agreed that said payment shall not affect said equity existing between Charles Friborg and W. S. Edwards, agent, and that Charles Friborg will when he receives the money from bankruptcy proceedings reimburse said W. S. Edwards, agent, for costs and expenses advanced in injunction brought by Charles Friborg against Bullock and others." (Parentheses ours).

Nothing further was ever done by Edwards about the foreclosure of the Friborg deed of trust, and on September 28, 1943, Friborg was recommended by the Conciliation Commissioner for discharge from bankruptcy with a small cash balance in his estate. The Federal Court order of discharge was made three days later on October 1, 1943.

As will be remembered, the contract here in suit provided that if Friborg's title to the land in suit was established in the then pending litigation between Bullock, Gee and the E. B. Gee Land Company, then Mrs. Edwards would *pay* the taxes on the land, and *she* would *pay* Bullock the sum due him from Friborg. That was the basis and consideration on which Mrs. Edwards as trustee was to sell the land within twelve months; reimburse herself from the proceeds for sums paid out; and to retain one-half the net proceeds.

But appellant W. S. Edwards, who acted for the E. B. Gee Land Company and actually carried out the transaction, admitted when testifying that he did not pay any taxes on the Friborg land. These were discharged out of rents in the bankruptcy court. Neither did he *pay* the mortgage encumbrance on the land to Bullock. On the contrary he *bought* the mortgage and notes from Bullock and took an assignment thereof. And shortly after that he surrendered them to

Friborg upon receipt of Allgier's check therefor. He conceded the only financial outlay he had made for which he had not been reimbursed was the money he had expended in paying the costs in Friborg's fruitless injunction suit against Bullock. He gave that amount as $495.23, of which $311.12 was actually paid and $184.11 was interest. But as stated earlier in the opinion the only disbursements for which he produced cancelled checks totaled $296.95.

Neither did Mr. Edwards' testimony on cross-examination help his case. When asked why he (through his wife) entered into the contract in suit with Friborg, dated February 16, 1932, he answered it was because he thought "the poor fellow was being taken advantage of" by Bullock when the latter started the foreclosure of Friborg's mortgaged land before the two pending Bullock-Gee and E. B. Gee Land Company suits, supra, involving the title to the same land had been decided by this court. But when queried about the fact that that same contract gave the E. B. Gee Land Company a half-interest in Friborg's land, or the proceeds therefrom, Edwards said the Land Company intended to apply that money on another totally separate claim for $2000, which Friborg owed the Land Company. In other words the Land Company also gained an advantage. If it won the two title suits against Bullock, the latter's grantee, Friborg, would have no title at all. But if Bullock (and hence Friborg) won, then under the contract the Land Company would get a half of Friborg's title anyway, or of the proceeds therefrom, to apply on another separate debt he owed the Land Company. The equities do not favor the Land Company.

Hurriedly reviewing the testimony of respondent Friborg, who was the only witness [259] in his behalf. He was, apparently a rather illiterate man, though he could read. He had spent most of his life in tenant farming and as a foreman or overseer. When he was threatened with the foreclosure of Bullock's deed of trust he went to appellant W. S. Edwards' office and consulted him. Edwards wrote the contract in suit on the typewriter about 4 o'clock in the afternoon. He did not read it to Friborg, but talked about it as he proceeded to write. Then they went hurriedly to the office of attorney E. F. Sharp, who did read the contract aloud to himself, and said he "guessed it was all right." Friborg thought Edwards signed the contract in his office and that he (Friborg) signed it in Mr. Sharp's office. And it is a fact that Edwards' signature was in lead pencil whereas Friborg's was in ink.

Friborg conceded he agreed to sign a quitclaim deed when Edwards paid off the Bullock mortgage notes and stopped the "law suit" (meaning the Bullock foreclosure?). But he declared positively he did not sign such a deed, or any deed, the day the contract was drawn, and that no deed was written. He further said that from

then on he never was asked to sign a deed until 1942. This last was admitted by Edwards. But Edwards and another witness, attorney H. C. Riley, testified they went to see Friborg on September 9, 1942, and demanded that he execute a quitclaim deed. That was after his wife had died; one day after the decision of the Gee case in this court; and on the day that Mrs. Ethel S. Edwards filed her first specific performance suit in the circuit court. Friborg declared he refused to sign the deed. Riley and Edwards testified Friborg based his refusal on the ground that he had already signed a deed.

But if Friborg did sign a quitclaim deed when the contract in suit was written, it is singular that W. S. Edwards never was able to produce it; that Friborg's wife (then living) was not asked to sign it; and that there is no proof of any knowledge of it on the part of attorney E. F. Sharp, to whose office Edwards and Friborg immediately went after the deed purportedly was signed.

Friborg further testified there was no agreement that he was to pay Edwards any rent on the land, and that he did not request Edwards to take up the Bullock notes. On the contrary he said he (Friborg) had already made arrangements with Allgier to pay the Bullock notes secured on his land "before the suit was settled." By this we understand the witness meant, before Edwards purchased the above mentioned notes and ended the controversy with Bullock.

The findings and decree of the chancellor were as follows:

"The Court finds that the plaintiffs have failed to sustain the burden of proof required to entitle them to the relief of specific performance of the contract sued upon and that to grant such specific performance would be inequitable and unjust to the defendant.

"The Court further finds that defendant is indebted to the plaintiffs (for costs paid by W. S. Edwards in the unsuccessful injunction suit) and that plaintiffs have an adequate remedy at law therefor and that their cause herein should be dismissed without prejudice to such rights at law. (Parenthesis ours).

"Wherefore, it is ordered, adjudged and decreed that plaintiffs' bill in equity be dismissed and specific performance of the contract in question be denied, without prejudice to such rights as plaintiffs may have at law. Costs herein are taxed against the plaintiffs and execution is ordered to issue therefor."

We think the chancellor's decree was correct and in consonance with equity. Under this record appellants have no equity in the land that is entitled to protection under their written contract of February 16, 1938. They did not discharge the Bullock encumbrance thereon out of their own funds, nor did they pay the taxes. They merely purchased the notes and deed of trust from Bullock and sold them to Friborg. And the taxes were paid out of rents in the bankruptcy court. Appellant [260] W. S. Edwards' Memorandum Agreement

of September 25, 1943, does purport to preserve appellants' equity in the land, but as stated, there was none; or if there was, it was without consideration. They do have a claim for costs paid in the unsuccessful injunction suit, but that should be asserted at law.

The judgment and decree of the trial court are affirmed. All concur.

