[Civ. No. 8167.   Third Dist.   Nov. 5, 1952.]

LOUISE R. HILL et al., Appellants, v. STATE BOX COM-PANY (a Corporation), Respondent.

Fred Pierce and Frank G. Finnegan for Appellants.

Dwyer & King for Respondent.

SCHOTTKY, J. pro tem.—Appellants, as successors in interest of Eldon L. Cleveland, commenced an action to enjoin respondent, State Box Company, from cutting and removing timber from Section 27, T. 18 N., R. 11 E., in Nevada County, and to quiet appellants' title to said timber.

Respondent filed an answer denying that appellants had any right to said timber and also filed a cross-complaint in

which they asserted their right to said timber under a written contract entered into on June 5, 1944, between Cleveland and respondent, State Box Company.

Said agreement recited that Cleveland was the owner of six described parcels of land, and that he agreed to sell and respondent agreed to buy the merchantable timber on said land at certain specified price for the different varieties of timber. Respondent was to pay for the timber cut on the tenth of each month of operation, covering the last half of the preceding month, and on the 25th of each month covering the first half of such month. And, as an advance payment, a credit to the extent and in the amount of $20,000 upon anticipated production and upon the ultimate purchase price as determined by the true amount of such merchantable timber. Respondent agreed to pay, however, $10,000 in cash at the time of executing the agreement, receipt of which was acknowledged, and two notes of $5,000 each of even date, without interest, one to mature April 25, 1945 and the other July 1, 1945. Thereafter respondent was not to be called upon for further payments until $20,000 had been consumed in the quantity of timber cut, whereupon payments for timber cut would be made semimonthly.

Paragraph 6 of the agreement reads as follows:

"6. The parties agree that all timber shall be paid for by the State Box Company within four (4) years from the date hereof. This obligation prevails as against any provision above indicating otherwise. It is further agreed, however, that the State Box Company shall have and is hereby given a period of fourteen (14) years from the date hereof within which to cut and remove such merchantable timber, within which period State Box Company agrees to cut and remove the same. In the event that the State Box Company fails to cut and remove all of said merchantable timber within said fourteen-year period, it shall lose and forfeit any further right, title or interest in or to said timber, which shall thereupon revert to Eldon L. Cleveland, free of any claim by the State Box Company and all money theretofore paid by State Box Company to Eldon L. Cleveland shall be retained by him as liquidated damages for such breach. If the State Box Company does not cut and remove all of said merchantable timber within the

years [written in ink]
period four/from the date hereof, the remaining merchantable timber on said premises shall be cruised by a timber cruiser sufficiently in advance of the date herein named for such final

payment to permit such final payment to be made on said date and such final payment shall be made at the prices stipulated in the first paragraph of this Agreement upon the basis of such final cruise. If the United States Forestry Service will undertake such final cruise for the parties hereto, the United States Forestry Service shall be engaged for such work, and the expense shall be paid by the parties hereto half and half. If the United States Forestry Service will not undertake such final cruise, then the cruise shall be made by some competent timber cruiser satisfactory to both parties and the fee or expense of such cruise shall be upon both parties half and half. If the parties are unable to agree upon such a timber cruiser, the cruise shall be made by someone selected by State Box Company at its expense, with the privilege of reviewing and checking by Eldon L. Cleveland. The right of the State Box Company, after the expiration of the first four (4) years of this Agreement, shall, in the purchasing and cutting of timber, be limited to such quantity as was included in the said final cruise used as the basis for final payment hereunder.''

All of the timber on these six parcels was cut and removed, and was fully paid for, and there is no dispute with reference thereto. The controversy involved in the instant case is over the timber on the parcel described in paragraph 12 of the agreement, which reads as follows:

''12. Eldon L. Cleveland has an uncertain and undetermined interest in or claim upon that certain real property situate in the County of Nevada, State of California, and more particularly described as follows: NW$\frac{1}{4}$, SW$\frac{1}{4}$, W$\frac{1}{2}$ of SE$\frac{1}{4}$ and S$\frac{1}{2}$ of NE$\frac{1}{4}$ of Section 27, Township 18 North, Range 11 East, M.D.B.& M., less valid overlapping mining claims. In the event that Eldon L. Cleveland perfects title to said real property and the timber thereon or acquires or perfects title to the timber thereon, said timber shall become and shall be subject to the terms and provisions of the foregoing Agreement the same as though originally included in and made a part hereof, the said timber so located on said real property being treated as though originally described herein as part of the subject matter of this Agreement. Eldon L. Cleveland agrees to press and establish such right or interest as he may have in and to said timber so that the same, if such action on his part be successful, may be included as a part of this agreement.''

The court found that respondent cut all the timber from said six parcels and overpaid Cleveland $4,605.80, that is,

the initial payment of $20,000 was not used up in timber cut. The court also found that appellants acquired their title to the timber in Section 27 from Cleveland with full knowledge of the rights of respondent to cut timber; that Cleveland's title or claim to the timber in Section 27 "was uncertain and undetermined" and that Cleveland was bound and obligated "to press and establish such right or interest as he then had in the timber on said Section 27"; that Cleveland took no court action to quiet his title to the timber, and refused to press or establish his right or interest; that respondent was not obligated to pay Cleveland or his successors any money for timber in Section 27 until Cleveland established his title or interest to that timber; that Cleveland's title to the timber in Section 27 was established by reason of litigation arranged and conducted, not by Cleveland, but by respondent in the case of *United States of America* v. *P. S. Waldron, Margaret A. Waldron, State Box Company, and Tahoe Sugar Pine Company,* action No. 6105 in the United States District Court, wherein Judge Dal M. Lemmon, on or about November 21, 1949, made his decision; that the issue of title to timber land in the Waldron case was the same as the title of Cleveland; that Cleveland took no part in the Waldron litigation, bore no expense thereof and contributed nothing; that the decision in the Woldron case made November 21, 1949, was subject to appeal by the United States but was finally settled on or about January 20, 1950, with the entry of an agreed modified judgment; that ever since the clearing of the title of Cleveland by the decision in the Waldron case respondent has been ready, willing and able to perform all the terms of the agreement of June 5, 1944, and so advised Cleveland and the appellants, and also Cal-Ida Lumber Company to whom appellants gave a contract for cutting the same timber.

The court also found that the agreement of June 5, 1944, is fair and reasonable; that there were 10,225,000 feet of timber on said Section 27 and the value thereof which respondent would have to pay to Cleveland or his successors amounts to $20,740.35; that on or about March 6, 1950, respondent, through Tahoe Sugar Pine Company, began cutting the timber on Section 27 and made a tender of $20,740.35 to Cleveland and to appellants, and on June 10, 1950, deposited that amount with the clerk of the court.

Judgment was entered in accordance with said findings, decreeing that plaintiffs and appellants take nothing against defendant and respondent; that the rights of plaintiffs and

appellants are subordinate to the rights of defendant and respondent to cut and remove all of the timber on said Section 27; and that plaintiffs and appellants be restrained from cutting or removing any of said timber and from interfering with the cutting or removal of said timber by defendant and respondent.

Plaintiffs' motion for a new trial was denied and they have appealed from the judgment.

In arguing for a reversal of the judgment appellants outline their contentions as follows:

"Can a contract for the sale of standing trees, which provides that the buyer must cruise and pay for same within four years, be extended to an indefinite period beyond the prescribed time limit simply because the buyer is not satisfied with the seller's title.

"Is not such an extension of time invalid on each of the following grounds:

"I. As an erroneous construction of the actual language used by the parties in their written contract expressly limiting performance to a four-year period?

"II. As a misinterpretation of the contract in the light of the subsequent conduct and contemporaneous construction placed upon it by the parties which limited performance to a four-year period?

"III. As a violation of the Constitution Article XII, Section 9, and Civil Code, Sections 711, 715, 715.1 and 715.2, in that such a construction by the trial court makes it a perpetual option?"

Appellants then proceed to make an elaborate argument to the effect that under the language of the agreement performance by respondent was limited to a four-year period. Their argument is ingenious but unconvincing because they omit the important fact found by the court, upon sufficient evidence, that their predecessor in interest, Cleveland, promised to perfect his admittedly defective title to the timber on Section 27 and took no steps to do so. They argue that respondent was obligated to pay for the timber on Section 27 within four years from the date of the contract, under paragraph 6 thereof, regardless of the title of Cleveland or of his lack of effort to establish his title. However, time was not made the essence of the contract, and even if it were, it is difficult to understand how it would be reasonable to expect respondent to cut and pay for the timber when Cleveland was unable to give

satisfactory evidence of title. Indeed, on page 8 of their opening brief, appellants state:

"On July 17, 1947 [which was less than four years from date of the agreement], Lt. Cleveland came to the office of State Box bringing with him a preliminary title report of the California Pacific Title Insurance Company [Ex. H, R.T. 48]. In this report, the title examiner stated his opinion that Lt. Cleveland had not acquired a clear title to the Section 27 timber and that the title of the Federal Government was paramount.

"However, on this occasion, State Box told Cleveland that if he could get the title cleared up, State Box would go ahead and cut the timber [R.T. 48] and that title insurance would be accepted by it [R.T. 56]. Nothing was ever accomplished in this connection."

Thus it is clear from the record that respondent was willing to cut and pay for the timber on Section 27 just as soon as it had reasonable assurance that the timber was owned by Cleveland and that it took steps to clear the title when Cleveland failed to do so. The agreement was dated June 5, 1944, and Judge Lemmon's decision, as a result of which the title was cleared, was rendered on November 21, 1949, which was more than four years after the date of the contract.

It is clear also from the record that respondent did not at any time abandon its rights under the agreement. For on June 8, 1948, three days after the expiration of said four-year period, Cleveland wrote State Box Company that because of its failure to comply with paragraph 6 and particularly to cause the timber to be cruised sufficiently in advance of June 5, 1948, to permit the final payment, the entire agreement was cancelled and annulled.

Immediately thereafter, to wit, on June 11, 1948, Mr. Sumner Mering, attorney for State Box Company, wrote Cleveland and Cal-Ida Lumber Company, to whom Cleveland had given permission to cut the timber, telling them that State Box Company was determined to enforce its agreement with Cleveland and that Cleveland had been, up to this point, overpaid $4,605.80 on timber cut on said six parcels other than Section 27.

We are convinced that the court correctly determined that Cleveland had agreed to sell to respondent the timber on Section 27 and agreed also to take steps to clear his title thereto, and that Cleveland could not ignore his obligation to take such steps and then assert rightly that respondent's rights

in said timber under said agreement were lost by the passing of time.

Section 1439 of the Civil Code reads in part:

"Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself."

In *McElwee* v. *Beckwith*, 198 Cal. 341 [244 P. 1084], the court said at page 345:

". . . The plaintiffs were not able to deliver to the defendant a clear title, nor an abstract showing clear title, as called for in the option agreement, and could not, therefore, put the defendant in default even if it be conceded that she was during that time unable to make the payment. (Civ. Code, sec. 1439.)"

And in *Mallett* v. *Doherty*, 180 Cal. 225 [180 P. 531, 15 A.L.R. 19], the court said at page 230:

". . . If the plaintiff was prevented by the defendant from going on the land and cutting the timber, the period of interruption should be taken into account and the term extended by operation of law for the time during which the plaintiff was so prevented from exercising his right."

Respondent cites two Missouri cases which appear to support its position. In *Bank of New Madrid* v. *Bullock* (1944), 352 Mo. 710 [179 S.W.2d 81, 83], one Bullock as vendor agreed to convey certain land to one Ortman. It was recognized that Bullock's title was defective and in the contract Bullock agreed to clear his title. He did not clear his title and sought to have Ortman's rights in the contract forfeited. In specifically enforcing the contract against the vendor, Bullock, the court said:

". . . Ortman was at all times ready to comply with the contract. He in no way interfered with Bullock's effort to quiet title. It happened that the land materially increased in value after Bullock contracted to sell the same to Ortman. The increase in value prompted Bullock's letter to Ortman on November 17, 1939. It was written in an effort to induce Ortman to cancel the contract."

The other case cited is *Rogers* v. *Gruber* (1943), 351 Mo. 1033 [174 S.W. 2d 830], which involved a vendor-vendee contract and vendor finally tried to avoid conveying. The buyer, Rogers, sued for specific performance. The contract obligated the vendee to pay on a certain date. Prior to the time of payment the parties recognized that vendor's title was defective

and vendor agreed to perfect his title. After the title was cleared, the vendor refused to convey on the ground the vendee had failed to pay the price on the due date. The court granted specific performance to the vendee and held that the failure of the vendor to clear his title amounted to a waiver of the default of the vendee even in a contract where time was of the essence.

Finally appellants argue that respondent's interpretation of the agreement renders the agreement void as violative of the statute against perpetuities. In their argument on this point appellants erroneously refer to the contract as an "option." The rule as to perpetuities in connection with options has nothing to do with the bilateral contract here involved in which each party was bound to perform. Since time was not made of the essence, both parties had a reasonable time to perform. But this reasonable time rule did not give Cleveland the right to refuse to do anything and then by his own breach try to forfeit the rights of State Box Company. Had Cleveland proceeded with his obligation to attempt to clear his title within a reasonable time, particularly within the four years he now claims was the limit of time within which State Box Company had to pay the price, there would have been no controversy at all.

We believe that it is correctly stated in 37 California Law Review, at page 243, that: "The courts have never been troubled over the possible application of the Rule against Perpetuities to land-purchase contracts. Nor should this matter perplex the courts, for it is clear that when one becomes the vendee of a land-purchase contract, he acquires thereby a vested equitable interest. The parties must perform the contract within a reasonable time when no date of performance is specified."

Appellants' argument upon this point is lacking in merit and the cases cited by them are not in point because in the instant case we are not dealing with an option but with a contract to sell and purchase timber within a specified time. Cleveland was obligated to take the necessary action to quiet his title to the timber and he delayed doing so until through the efforts of respondent in the Waldron case in which respondent was vitally interested, the title of Cleveland to the timber in Section 27 was established. We have been cited to no authority, and have found none, which would permit a party to a contract in the position of Cleveland to success-

fully claim a violation of the rule against perpetuities by first breaching his obligations under the contract and then seeking to rely upon delay caused by his own default.

The judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.

A petition for a rehearing was denied December 5, 1952, and appellants' petition for a hearing by the Supreme Court was denied December 29, 1952. Carter, J., was of the opinion that the petition should be granted.