562 A.2d 757

**DORADO LIMITED PARTNERSHIP**

v.

**BROADNECK DEVELOPMENT CORPORATION.**

No. 141, Sept. Term, 1987.

Court of Appeals of Maryland.

Sept. 1, 1989.

Ellis J. Koch, Rockville, for appellant/cross-appellee.

Timothy E. Meredith (Corbin, Warfield, Schaffer & Meredith, Chartered, on brief), Severna Park, for appellee/cross-appellant.

Argued Before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ELDRIDGE, Judge.

This case involves the question of whether a contract for the sale of land, under which title may not be transferred until an indefinite date, is enforceable. Because the buyer's interest may vest too remotely, we hold that the contract in the case at bar violates the Rule Against Perpetuities.

On June 23, 1981, Dorado Limited Partnership and Broadneck Development Company entered into a contract to sell real property located in Anne Arundel County. Under the contract Broadneck agreed to sell 70 lots to Dorado for $280,000. In addition, Broadneck granted Dorado an option to purchase an additional 252 lots. The option on the first 126 lots remained open until one year after settlement on the original 70 lots. The option on the final 126 lots remained open for an additional year.

Settlement was reached on the original 70 lots on May 12, 1983. On February 16, 1984, the parties amended the contract. This amended agreement provided, *inter alia*, that the option on the additional 252 lots would expire unless Dorado exercised its option on at least 120 lots by April 15. On April 13, 1984, the parties settled on an additional 140 lots. On April 16, 1984, they amended the contract for the second time. This second amendment, which is the subject of the present litigation, provided in its relevant part as follows:

"1. Buyer agrees to purchase and settle on all remaining lots covered by the Contract of Sale by payment of the purchase price in cash not later than ninety (90) days after the Seller has delivered to Buyer evidence of sewer allocations for such lots. Time is of the essence of all the provisions of the Contract of Sale."

In essence, this second amendment was a contract for the sale of the remaining 112 lots. The actual purchase of these units, however, would not occur until after Broadneck obtained a sewer allocation.

As a result of a county moratorium on sewer allocations, Broadneck has been unable to procure the sewer allocation, and thus the sale has never been consummated. Finally, Broadneck brought this declaratory judgment action in the Circuit Court for Anne Arundel County seeking an adjudication of the rights and obligations of the parties, a declaration that the contract for the sale of the remaining 112 lots was void, and any other appropriate relief. Broadneck relied on three alternate theories why the contract was void. Each theory is premised on the fact that the settlement date could be extended indefinitely because it is uncertain when sewer service will be allocated. Broadneck asserted that the contract was unenforceable because it: (1) violates the Rule Against Perpetuities; (2) imposes an unreasonable restraint on alienation; or (3) is vague and uncertain.

The circuit court rejected each of Broadneck's contentions and held that the contract "remains in full force and effect and is binding upon the parties." Broadneck appealed to the Court of Special Appeals. In the intermediate appellate court, Broadneck made the same three arguments which it had made in circuit court. The Court of Special Appeals, in an unreported opinion, reversed, holding that the contract was void as an unreasonable restraint on alienation. The intermediate appellant court did not reach either of Broadneck's other two assertions.

Thereafter, Dorado petitioned this Court for a writ of certiorari, raising the issue of whether the contract violated the rule against unreasonable restraints on alienation. Broadneck filed a conditional cross-petition for a writ of certiorari, raising the other two arguments which Broadneck had advanced below. We granted both the petition and the cross-petition.

In our view, the contract for the sale of the remaining 112 lots violates the Rule Against Perpetuities. Consequently, we do not reach the issues of whether the contract is an unreasonable restraint on alienation or is fatally vague. We shall affirm.

■ Except for a few statutory modifications,[1] Maryland retains the common law Rule Against Perpetuities. *Ferrero Constr. v. Dennis Rourke Corp.*, 311 Md. 560, 564, 536 A.2d 1137, 1139 (1988). While generally the Rule does not apply to contracts, nevertheless if a contract creates an equitable right in real property, enforceable by specific performance, the contract is subject to the Rule. Gray, *The Rule Against Perpetuities*, § 329 (4th ed.1942); Thompson, Real Property, § 2020 (1979). Thus, this Court has previously held that the Rule applies to an option contract to purchase land, *Commonwealth Realty v. Bowers*, 261 Md. 285, 274 A.2d 353 (1971), and to a right of first refusal to purchase an interest in property, *Ferrero Constr. v. Dennis Rourke Corp., supra.*

As a formulation of the Rule Against Perpetuities, our cases have adopted Professor Gray's statement that "[n]o interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." *Fitzpatrick v. Mer.–Safe, Etc. Co.*, 220 Md. 534, 541, 155 A.2d 702, 705 (1959), *quoting* Gray, *supra*, § 201. The Court pointed out in *Fitzpatrick*, 220 Md. at 541, 155 A.2d at 705, that the Rule does not invalidate "interests which last too long, but interests which vest too remotely; in other words the Rule is not concerned with the duration of estates, but the time of their vesting." *See also Ferrero Constr., supra*, 311 Md. at 565, 536 A.2d at 1139; *Commonwealth Realty v. Bowers, supra*, 261 Md. at 296, 274 A.2d at 358–359. "Vested" was defined in *Chism v. Reese*, 190 Md. 311, 320–321, 58 A.2d 643, 647 (1948), as follows:

"The term 'vested' as used in the law of property, signifies that there has been the fixation of a present right to either the immediate or future enjoyment of property. *Curtis v. Maryland Baptist Union Ass'n*, 176 Md. 430, 438, 439, 5 A.2d 836, 121 A.L.R. 1516. The term

---

1. Maryland Code (1974) § 4–409, § 11–102, § 11–103 of Estate and Trusts Article.

'vested' has also another meaning, which is so frequently given to it that it cannot be styled improper. This other meaning is 'transmissible.' As Professor Gray of Harvard has said, 'Such double meaning is, however, very unfortunate, as it has led to much confusion.' *Gray, Rule Against Perpetuities*, 4th Ed., § 118. Vesting in that secondary sense is not sufficient to escape the rule against perpetuities. The interest must vest in the sense of becoming a vested remainder.

.     .     .     .     .

"The event, upon the happening of which the remainder is to vest, must be one that is certain to happen within the prescribed period, otherwise the limitation is void."

The purposes of the rule include the facilitation of alienation of property and maintaining certainty of title. *Ferrero Constr., supra,* 311 Md. at 572, 536 A.2d at 1143.

Broadneck argues that the contract violates the Rule Against Perpetuities because Dorado's interest might never fully vest. Broadneck points out that legal title can not vest until there is a sewer allocation. There is no certainty, however, that Broadneck will ever obtain a sewer allocation. Therefore, Broadneck concludes, it is possible that Dorado's interest will not vest within a life in being and 21 years.

According to Dorado, the Rule Against Perpetuities does not require that legal title must vest, if at all, within the perpetuities period. In Dorado's view, the proper question is "whether each interest in the land has vested." Dorado reasons that, under the contract, each interest has vested. On the one hand, it obtained an equitable interest in the property at the signing of the contract. On the other hand, Broadneck retained legal interest or title. In essence, Dorado maintains that a land sales contract can never violate the Rule Against Perpetuities.

█ In our view, when the purpose of a contract is to transfer legal title in land, then legal title must vest within the period of the Rule Against Perpetuities. Otherwise, there would be the distinct possibility that a contract would

render title uncertain. After the signing of the contract, the seller retains legal title until the deed is properly executed and delivered. *Childs v. Ragonese,* 296 Md. 130, 139 n. 8, 460 A.2d 1031, 1036 n. 8 (1983). Until that point, the seller's interest is fettered by the possibility that it will be required to relinquish title to the purchaser. Between the signing and execution of the contract, the owner of legal title would be reluctant to make the most effective use of the property. *See Ferrero Constr., supra,* 311 Md. at 572, 536 A.2d at 1143. The parties' interests could remain in this state forever, if, as Dorado argues, the Rule does not require legal title to vest in the purchaser.

Consequently, the purchaser's immediate acquisition of equitable interest alone is not sufficient to guarantee that the Rule Against Perpetuities has not been transgressed. For a land sales contract to be valid under the Rule, therefore, legal title must vest in the purchaser within a life in being plus 21 years.

The Court expressed the same position in *Commonwealth Realty v. Bowers, supra.* That case presented the issue of whether an option contract violated the Rule Against Perpetuities. Like Dorado, the holder of the option, Commonwealth, argued that the option did not violate the Rule because the right to exercise the option is a present vested right. In rejecting Commonwealth's argument, we pointed out (261 Md. at 298, 274 A.2d at 359) that

> "the vesting of the fee simple estate in the land occurs when and if the option is exercised in the future by Commonwealth, notice given and the $18,000 [the purchase price] paid."

In addition, cases in other jurisdictions contradict Dorado's position that a contract for sale of property does not violate the Rule Against Perpetuities on the ground that the purchaser acquired equitable title upon the signing of the contract. *See, e.g., Horticultural Development Co. v. Lark,* 224 Ala. 193, 139 So. 229 (1932); *Comstock v. Smith,* 255 Ark. 564, 501 S.W.2d 617 (1973); *Hill v. State Box Co.,* 114 Cal.App.2d 44, 249 P.2d 903 (Cal.Dist.Ct.App.1952);

*Read v. GHDC, Inc.,* 254 Ga. 706, 334 S.E.2d 165 (1985); *Rodin v. Merritt,* 48 N.C.App. 64, 268 S.E.2d 539, *appeal dismissed,* 301 N.C. 402, 274 S.E.2d 226 (1980); *Ryland Group, Inc. v. Wills,* 229 Va. 459, 331 S.E.2d 399 (1985). *See, also,* Gray, *supra,* § 330 n. 2; Thompson, *supra,* § 2020.

In *Comstock v. Smith, supra,* 255 Ark. at 565, 501 S.W.2d at 618, for example, the Supreme Court of Arkansas held that a contract for the sale of land violated the Rule Against Perpetuities. There, the buyers had entered a contract to purchase a piece of property for $18,000. Under the terms of the contract, the monthly installments were $85 and the interest rate was 7½% per annum. The court concluded (255 Ark. at 565–566, 501 S.W.2d at 618) that the buyers' interest might not vest within a life in being plus 21 years because

"the monthly payment of $85 was less than the interest upon $18,000 at 7½ per cent per annum. There was no requirement that the principal debt be paid at any speci-fied time. Consequently the purchasers and their succes-sors in interest might have made payments for scores or even hundreds of years without violating their contract or acquiring a right to a conveyance of the property. Thus the alienability of the title might be fettered for a period far beyond that allowed by the rule against perpetuities."

Even when courts hold that a particular contract for the sale of land does not violate the Rule Against Perpetuities, it is not on the ground that the purchaser received equitable title. The contract at issue in *Ryland Group, Inc. v. Wills, supra,* 229 Va. 459, 331 S.E.2d 399 (1985), for example, granted the purchaser an option to buy 255 lots in a subdivision. The option remained open for three years. In the contract, the seller also agreed, if the purchaser exer-cised its option, to develop the lots before settlement. Af-ter initially concluding that the option clause did not violate the Rule Against Perpetuities, the Supreme Court of Virgi-nia also held that, should the purchaser exercise its option, the resulting contract for sale would not violate the Rule.

Its analysis was as follows (229 Va. at 464–465, 331 S.E.2d at 402–403):

> "The trial judge further stated that while [the purchaser] would acquire an equitable estate in a lot upon exercise of the option to purchase it, legal title would not vest until delivery of the deed at settlement. Since settlement might not occur until development had been completed and the judge concluded that development might be delayed more than 21 years, he was of the opinion that the contract violated the rule against perpetuities.
>
> "We agree that upon exercise of the option, [the purchaser] would acquire an equitable interest in the lots it committed itself to purchase, with the right to compel conveyance of legal title.... Upon exercise of the option, the agreement would become an executory contract for the sale of land with mutuality of obligation and remedy. ... Such a contract creates an interest in land enforceable in equity and is therefore subject to the rule against perpetuities....
>
> "We also agree that vesting of legal title is postponed until delivery of the deed at settlement. We do not agree, however, that vesting of legal title might not occur within the period of the rule against perpetuities."

The court held that, under the terms of the contract, development would necessarily occur within 21 years. Consequently, settlement and vesting would also take place before 21 years.

It is immaterial, therefore, whether Dorado has already received equitable title. If legal title might not vest within a life in being and 21 years, then the contract is invalid under the Rule Against Perpetuities. It seems clear, and Dorado does not contend otherwise, that legal title might not vest in Dorado until after the perpetuities period. Settlement is contingent upon a county sewer allocation. It is uncertain when, if ever, Broadneck will obtain the sewer allocation. It is conceivable that it could occur after a life in being plus 21 years.

In *Commonwealth Realty v. Bowers, supra,* we reached the same conclusion with respect to a similar clause in an option contract. In that case, Commonwealth purchased an option to buy a parcel of land in Washington County. The option contract provided in its relevant part (261 Md. at 287, 274 A.2d at 354):

"2. This Agreement shall extend for 180 days; or, if the requisite zoning and permits, described in Article 4 hereof have not been finally issued or denied beyond appeal, until 15 days after such final action thereon. Buyer may renew it for an additional period of 180 days from the later of the above dates by paying as consideration therefor, monthly in advance, the sum of $2.00 for each day so renewed."

Under the terms of the contract, therefore, Commonwealth's option would remain open until it applied for, and received, zoning approval and permits. This Court concluded (261 Md. at 298, 274 A.2d at 359) that the clause

"violates the Rule in that it may be exercised with a resulting vesting of the fee simple estate long after lives in being (and the period of gestation) as and when the option contract is exercised."

We recognize that some courts have held that a contract for the sale of land, which did not expressly provide a time for performance, did not violate the Rule Against Perpetuities because the court construed the contract so as to imply a reasonable time for performance and found that a reasonable time would be less than the perpetuities period. *See, e.g., Read v. GHDC, Inc., supra,* 254 Ga. at 706, 334 S.E.2d at 166; *Rodin v. Merritt, supra,* 48 N.C.App. at 71, 268 S.E.2d at 543; *Ryland Group, Inc. v. Wills, supra,* 229 Va. at 465, 331 S.E.2d at 403.

In *Ryland Group, Inc. v. Wills, supra,* however, the Supreme Court of Virginia took the position that it would not construe the contract as imposing a requirement of performance within a reasonable time when there was "a contingency to be performed by a party who was not privy to the agreement." 229 Va. at 467, 331 S.E.2d at 404.

Earlier, in *United Virginia Bank v. Union Oil*, 214 Va. 48, 197 S.E.2d 174 (1973), the Supreme Court of Virginia held that an option which was to expire 180 days after the city of Newport News acquired the rights of way for the proposed highway violated the Rule Against Perpetuities. The court rejected the argument "that it was the 'dominant intent' of the parties to the option agreement that the city would acquire the rights-of-way in question, if at all, within a reasonable time and that such a time 'under the circumstances of this case is less than [the perpetuities period].' " 214 Va. at 52, 197 S.E.2d at 177. The court reasoned, *inter alia*, that "the asserted intent relates to acts which parties other than those privy to the agreement must perform to bring about occurrence of the agreed contingency. So whatever may have been the intent of the contracting parties, it is of little moment." *Ibid.*

Somewhat the same view is reflected in Professor Gray's treatise, *supra*, § 330 n. 2, where it is stated:

"An agreement for sale is not void because it does not expressly limit the time within which the agreement is to be carried out. The vendee has an equitable interest, subject only to the condition that the price shall be paid, which must be done within a reasonable time, and that would be less than twenty-one years. Re Doyle's Estate, [1907] 1 I.R. 204. But an agreement which gives the vendee the right to call for a conveyance only on the fulfillment of a condition which may be too remote, is unenforceable in equity."

■ We agree with the Supreme Court of Virginia that where the occurrence of the condition precedent to conveyance is beyond the control of the parties, a reasonable time for performance, less than the perpetuities period, cannot be implied. This position is in accord with our decision in *Commonwealth Realty v. Bowers, supra.*

■ In this case, Broadneck has fulfilled its obligation under the contract. It has applied for a sewer allocation. Settlement is dependent, not on performance by Broadneck,

but on the action of a third party, Anne Arundel County. Whether Anne Arundel County might grant a sewer allocation for the lots within the perpetuities period is unknown.

We conclude, therefore, that the contract for the sale of the remaining lots is unenforceable because it violates the Rule Against Perpetuities.

JUDGMENT AFFIRMED, WITH COSTS.